IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENISE DEFFEBAUGH, ) | |
| ) | |
| Plaintiff, ) | Case No. 12-cv-10244 |
| ) | |
| -vs- ) | |
| ) | Judge Edmond E. Chang |
| BNSF RAILWAY COMPANY, a Corporation, ) | |
| and JOHN ABRHAMSON and JASON ) | Magistrate Judge Daniel Martin |
| CURBOW, as individuals, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT BNSF RAILWAY'S RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1
STATEMENT OF ADDITIONAL MATERIAL FACTS**

NOW COMES Defendant BNSF Railway Company ("BNSF"), by and through its attorneys LaPointe Law, P.C., and hereby submits its Response to Plaintiff's Local Rule 56.1 Statement of Additional Material Facts, as follows:

54. Defendant did not discipline any manager working at the Galesburg terminal in 2011 and/or 2012 other than Plaintiff, for poor performance or for violating of for [sic] safety policy because no other manager failed to meet BNSF's performance expextations and because to BNSF's knowledge, no other manager violated safety policy. (Def. Inter. Ans. 12, Exhibit 5)

**RESPONSE**: Undisputed.

55. Plaintiff's job duties and responsibilities from her date of hire until her termination remained substantially the same throughout her employment and were not altered due to the employment of John Abrahamson, Galesburg Terminal Superintendent or due to the employment of Jason Curbow as Terminal Manager. (Def. Inter. Ans. 20, Exhibit 5)

**RESPONSE:** Undisputed, but immaterial and irrelevant.

56. The job duties of those supervising Plaintiff during her entire employment with BNSF remained the same. (Def. Inter. Ans. 21, Exhibit 5)

**RESPONSE:** Undisputed, but immaterial and irrelevant.

1

57. Deffebaugh received performance evaluations twice a year from BNSF in 2006, 2007, 2008, 2009, 2010, 2011 and 2012.

**RESPONSE:** Undisputed, but immaterial and irrelevant.

58. Deffebaugh received a rating of On Target on both performance evaluations in 2006 from her supervisor. (Exhibits 9 and 10)

**RESPONSE:** Disputed, but immaterial and irrelevant. In her mid-year 2006 performance evaluation, Deffebaugh's supervisor, Richard Danielson, rated Deffebaugh as Needs Improvement in the areas of service and velocity, people, expense control, and overall performance. (P's Exhibit 9)

59. Deffebaugh received a rating of On Target on both performance evaluations in 2007 from her supervisor. (Exhibits 11 and 12)

**RESPONSE**: Undisputed, but immaterial and irrelevant.

60. Deffebaugh received a rating of On Target on both performance evaluations in 2008 from her supervisor. (Exhibits 13 and 14)

**RESPONSE**: Disputed, but immaterial and irrelevant. In her year-end 2008 performance evaluation, Deffebaugh's supervisor, Randy McMahan, rated Deffebaugh as Needs Improvement in the area of leadership. (P's Exhibit 14)

61. Deffebaugh received a rating of On Target on both performance evaluations in 2009 from her supervisor. (Exhibits 15 and 16)

**RESPONSE**: Disputed, but immaterial and irrelevant. In her mid-year 2009 performance evaluation, Deffebaugh's supervisor, Randy McMahan, rated Deffebaugh as Needs Improvement in the area of leadership. (P's Exhibit 15)

62. Deffebaugh received a rating of On Target on both performance evaluations in 2010 from her supervisor. (Exhibits 6 and 17)

**RESPONSE**: Disputed, but immaterial and irrelevant. In her mid-year 2010 performance evaluation, Deffebaugh's supervisor, John Abrahamson, rated her as On Target in

three of four review categories, as well as for her overall performance. (P's Exhibit 6) Deffebaugh's supervisor gave her a rating of Needs Improvement for safety. (*Id.*)

63. Deffebaugh in her performance evaluation from January 1, 2011 through June 30, 2011 was given On Target by her supervisor. (Exhibit 8)

**RESPONSE**: Undisputed, but immaterial and irrelevant.

64. At the time of her hiring, Deffebaugh held and still holds a Masters Degree in Engineering. (P. Tr. 12)

**RESPONSE**: Disputed, but immaterial and irrelevant. Deffebaugh holds a Masters in Business Administration from Regis University. (P. Tr. 9)

65. Deffebaugh was the only African-American female trainmaster at its Galesburg Terminal. (P. Tr. 445)

**RESPONSE**: Undisputed, but immaterial and irrelevant.

66. The Trainmasters would not train Deffebaugh. (P. Tr. 24)

**RESPONSE**: Disputed, but immaterial and irrelevant. Deffebaugh testified that in 2006, when asked to train Deffebaugh, some of the trainmasters told her "they had been trainmasters for so long they could not remember how it was to start out." (P. Tr. 23)

67. Deffebaugh had as many as six supervisors, called terminal manager and terminal superintendents supervising her. (C. Tr. 17)(Def. Inter. Ans. 10 and 21)

**RESPONSE**: Undisputed, but immaterial and irrelevant.

68. All five employees of BNSF who were supervising Deffbaugh were males, with four of the five white males and one a Native American male. (Def. Inter. Ans. 10)

**RESPONSE**: Undisputed, but immaterial and irrelevant.

69. In June 2011, to improve operations and safety at the terminal, BNSF hired four male terminal managers as well as a new male Terminal Superintendent John Abrahamson. (C.Tr. 35-36)

**RESPONSE**: Undisputed.

70. Even though BNSF hired four male terminal managers to improve safety, the previous white male managers who were responsible for the lack of safety, which required the hiring of four male managers to improve safety, were not placed on performance improvement plans and were not terminated. (Def. Inter. Ans. 12)

**RESPONSE:** Disputed, but immaterial and irrelevant. In its Answer to Interrogatory 12, BNSF explains that it did not discipline any other manager working at the Galesburg Terminal in 2011 and/or 2012 with regard to the company's safety policies and expectations becaue BNSF was not aware that any manager, other than Deffebaugh, violated safety policy. (Def. Inter. Ans. 12)

71. Deffebaugh was given tasks the other white male trainmasters were not, for example, participating in the 1500 operations calls. (P. Tr. 121-122)

**RESPONSE:** Disputed. Deffebaugh did not testify that BNSF assigned her tasks that the company did not also assign to white male trainmasters. (P. Tr. 121-22) Rather, she testified that she participated in 1500 operations calls. (*Id.*)

72. Deffebaugh was set up for failure by management blaming her for a late report and being told a report was past due on an injured employee when Deffebaugh was not even working when the employee was injured, didn't know the employee's name or did not know what happened. (P. Tr. 337-338)

**RESPONSE:** Disputed. BNSF did not "set Plaintiff up for failure." Rather, Deffebaugh's failure to meet the company's expectations was the result of her own actions. (See BNSF Statement of Material Facts, ¶¶12-44) The company developed a comprehensive performance improvement plan and devoted substantial management resources toward developing Deffebaugh and improving her performance. (*Id.* at ¶¶20-36) With regard to the injury report, Deffebaugh testified that she <u>was</u> working and her managers asked her to tend to an ill employee. (P. Tr. 335-36) Deffebaugh viewed this as an example of a task her supervisors should have done instead of asking her to assist the employee and then to complete a report of the incident. (*Id.* at 331-36)

4

73. As the only other trainmasters were white males, Deffebaugh was being singled out for punishment as an African-American female while the actual white male who was working when the injury occurred was not disciplined for not filing out the injury report. (P. Tr. 337-338)

**RESPONSE:** Disputed, but immaterial and irrelevant. Deffebaugh was working when the injury occurred. (P. Tr. 335) Deffebaugh was not disciplined for failing to timely complete the report. When several days passed without Deffebaugh completing the report, John Abrahamson told her "You need to fill out your report." (P. Tr. 336) While Deffebaugh claims "they put those in my PIP," her PIP does not make reference to this incident. (P. Tr. 337; P. Dep. Ex. 11) There is no evidence in the record as to whether any employee was disciplined as a result of this incident.

74. Deffebaugh was rated negatively on her PIP for work that were [sic] done by the superintendent before Curbow was employed as the manager. (P. Tr. 332-333)

**RESPONSE:** Objection, ambiguous. Disputed, but immaterial and irrelevant. Deffebaugh's failure to meet her PIP objectives was the result of her conduct and performance between the date BNSF issued the PIP to Plaintiff, March 15, 2012, and the date of her termination, August 23, 2012. (BNSF Statement of Material Facts, ¶¶20-49; P. Dep. Ex. 11) On the cited pages of her deposition, Deffebaugh testified that John Abrahamson, Jason Curbow, and Donnie McKelvey, all of whom were Deffebaugh's supervisors, asked her to complete work that the trainmaster working the shift prior to Deffebaugh did not finish. (P. Tr. 331-33).

75. When Deffebaugh was away from her computer and didn't answer her telephone it was because she was in the rest room [sic] or laying off a crewmember or doing a crew briefing which were work related duties. (P. Tr. 130-131)

**RESPONSE:** Disputed. Deffebaugh testified that when she was in the Trimmer building, she was at her desk and telephone unless she was using the restroom or briefing crews, which took less than thirty minutes, two or three times each day. (P. Tr. 129-134)

5

76. During a period in which Deffebaugh was punished by Curbow for being away from her desk for two hours Deffebaugh was actually sent to work with the crew by her supervisor Ty Christian and therefore he knew where she was [sic] (P. Tr. 95-96)

**RESPONSE:** Disputed. Curbow did not punish Deffebaugh, nor did he take issue with her being away from her desk for two hours. Rather, as Deffebaugh testified, Curbow discussed with her the fact that she could not be reached for two hours. (P. Tr. 93-95)

77. There are [sic] times Deffebaugh could not log into the system o [sic] receive CAD messages because she could have been at a derailment. (P. Tr. 79)

**RESPONSE:** Disputed. Deffebaugh testified that "there were times" she chose not to log on to send or receive CAD messages and stated, "if there was a derailment … I might not have logged on at all." (P. Tr. 78)

78. There are [sic] times Deffebaugh could not log into the system to receive CAD messages because she had other work related duties. (P. Tr. 81-82)

**RESPONSE:** Disputed. On pages 81-82 of Deffebaugh's deposition, she responded to questions regarding her absences during her workday. (P. Tr. 81-82) Deffebaugh testified that she went home for food and to "pick up something." (*Id.* at 82)

79. The issue of not turning in a report on an injured employee on time was brought up at Deffebaughs [sic] PIP [sic] as a deficiency on her work, even though Deffebaugh was not working when the employee was working and didn't even know the employees [sic] name.

**RESPONSE:** Disputed. Deffebaugh testified that she <u>was</u> working and her managers asked her to tend to an ill employee. (P. Tr. 335-36) She viewed this as an example of tasks her supervisors should have done. (*Id.* at 331-36) Deffebaugh was not disciplined for failing to timely complete the report. (P.Tr. 336-37) While Deffebaugh claims "they put those in my PIP," her PIP does not make reference to this incident. (P. Tr. 337; P. Dep. Ex. 11)

80. Deffebaugh attempted to contact her supervisor Jason Curbow as instructed three times and Mr. Curbow failed to respond all three times. (P. Tr. 270-271)

6

**RESPONSE:** Disputed. While Deffebaugh testified that she "requested a meeting three times and did not get a response until the third time," she also admits that Jason Curbow told her that they needed to meet in Galena during a management retreat. (P. Tr. 269-71) She admits, pursuant to her PIP, she was responsible for ensuring that the meetings took place. (*Id.* at 217)

81. White males employees [sic] violated safety rules at BNSF and were not disciplined or terminated. Mr. Pilkington was filling potholes in the tack [sic] and he was told that was a violation by the stealth team. (P. Tr. 55)

**RESPONSE:** Disputed, but immaterial and irrelevant. No other managers, to BNSF's knowledge, violated safety rules at the Galesburg Terminal in 2011 and/or 2012. (Def. Interog. Ans. 12) Deffebaugh's deposition testimony at page 55 does not reference any employee violating safety rules. On page 53, Deffebaugh testified that "a gentleman" named Mr. Pilkington was filling potholes in the track and was told by the safety inspectors that this conduct violated safety rules. (P. Tr. 53) The record is silent as to whether Mr. Pilkington was a BNSF employee and whether he was disciplined for this conduct, as well as his race, job title and supervisor. When asked specifically about similarly situated employees, Deffebaugh did not know of any trainmaster who had received an overall needs improvement, was put on a PIP, failed to meet BNSF's objectives, and remained employed by BNSF. (P.Tr. 204-05)

82. The stealth team found three deadly safety violations in six hours. (P. Tr. 55)

**RESPONSE:** Undisputed, but immaterial and irrelevant.

83. No employee working under Deffebaugh has ever been injured on her shift. (P. Tr. 326)

**RESPONSE:** Undisputed, but immaterial and irrelevant. Deffebaugh was terminated for a history of performance failures, including committing a deadly decision, not because crew working during her shift were injured. (P. Dep. Ex. 26; Comp. ¶44)

84. Deffebaugh did not foster an unsafe environment. (P. Tr. 326)

7

**RESPONSE:** Disputed, but immaterial. Deffebaugh was terminated for a history of performance failure, including committing a deadly decision, which is the highest safety violation. (P. Tr. 405; P. Dep. Ex. 26; Comp. ¶44)

85. A female employee Karen Swedlund had been threatened by supervisor Jason Curbow. (P. Tr. 198-199)

**RESPONSE:** Undisputed, but immaterial and irrelevant. Deffebaugh also testified that Curbow made threats toward two Caucasian males, and, could have been "saying it to everybody." (P. Tr. 192-99; P. Dep. Ex. 10).

86. Two African-American employees working as trainmasters in the Southern Division received needs improvement and were terminated. (P. Tr. 205-206)

**RESPONSE:** Disputed in part, but immaterial and irrelevant. Deffebaugh testified that the two employees received "needs improvement and they're gone." (P. Tr. 204) She did not testify that the unidentified employees were terminated, and the record is silent on this issue.

87. Mr. Beckman conveyed information about testing failure to people who did not have a need to know and he was never disciplined. (C. Tr. 108)

**RESPONSE:** Disputed. Mr. Curbow testified that, after Mr. Beckman told Deffebaugh that he and Mr. Curbow had conducted a particular safety test, Deffebaugh sent an email to train crews berating Curbow and Beckman and accusing them of improperly failing an employee for a safety violation. (C. Tr. 107-08) She did so before learning all facts related to the test and its outcome. (*Id.*) In response to Deffebaugh's email, Mr. Curbow said to Mr. Beckman, "In the future, just don't tell her about operations test failures. She doesn't need to know about them. She wasn't part of them, so it's none of her business." (*Id.* at 108)

88. Deffebaugh never missed a day at work her entire career at BNSF. (Exhibit 8 page 3)

**RESPONSE:** Disputed, but immaterial and irrelevant. In the self-evaluation portion of her mid-year 2011 performance review, Deffebaugh wrote, "I have never missed a day of work my entire career at BNSF. (Exhibit 8, page 3) However, in her Complaint, Deffebaugh alleges Jason Curbow and John Abrahamson required her to make up sick days. (Comp. ¶18)

89. Jason Curbow claimed in 2011 that human factor safety incidents "continue to plague the Galesburg Terminal" while giving Deffebaugh a [sic] On Target and not providing any incidents of her being involved in any safety incidents in 2011. (Exhibit 8 pages 8 and 9)

**RESPONSE:** Disputed in part, but immaterial and irrelevant. Plaintiff's Exhibit 8 is her mid-year 2011 performance review, rating her performance from January 1, 2011 through June 30, 2011. (Exhibit 8) John Abrahamson completed Deffebaugh's mid-year 2011 review. (P. Tr. 37-38) Jason Curbow started working at the Galesburg Terminal at the end of June 2011. (P. Tr. 30)

90. None of the employees involved in the "human factor safety incidents that continue to plague the Galesburg Terminal" in 2011 were disciplined by BNSF. (P. Tr. 337-338; Def. Inter. Ans. 12, Exhibit 5)

**RESPONSE:** Disputed, but immaterial and irrelevant. BNSF is not aware of any manager, other than Deffebaugh, who committed a safety violation in 2011 and/or 2012, and, as a result, no managers were disciplined at the Galesburg Terminal. (Def. Inter. Ans. 12)

91. Deffebaugh worked at the Galesburg Terminal as a trainmaster the most consecutive years of any trainmaster. (Exibit 8, page 16)

**RESPONSE:** Disputed, but immaterial and irrelevant. In June 2013, Deffebaugh testified, "Currently, I have worked the most consecutive years at the Galesburg Terminal as a trainmaster." (P. Ex. 8, p. 16)

92. Deffebaugh tried to get promoted despite over 5 years of On Target review and her time at her job and was denied by BNSF [sic]. (See Exhibits 6, and 8-14 for her On Target performance reviews and Exhibit 8 page 16)

**RESPONSE:** Undisputed, but immaterial and irrelevant.  Deffebaugh does not allege a claim for failure to promote.

93.  Deffebaugh was elected as a company officer to receive the Galesburg Risk Reduction Committee award in May 2012 making her the only officer in Galesburg to ever receive this award.  (Defendants Exhibit to her [sic] MSJ Page 252)

**RESPONSE:** Disputed in part, but immaterial and irrelevant.  Deffebaugh testified, "I am the only company officer to be elected by our Galesburg Risk Reduction Committee for one of the highest honors the Chicago Division has."  (P. Dep. Ex. 18)   While Deffebaugh was nominated for the award, she did not receive the award.  (C. Tr. 127-28)

Dated:  December 12, 2014

Respectfully submitted,
BNSF RAILWAY COMPANY,

By: s/Susan M. Troester
One of Its Attorneys

Martin K. LaPointe (ARDC #6195827)
Susan M. Troester (ARDC #6238264)
LAPOINTE LAW, P.C.
1200 Shermer Road, Suite 310
Northbrook, Illinois 60062
Telephone:  847-786-2500
Facsimile:  847-786-2650

## CERTIFICATE OF SERVICE

The undersigned, an attorney, representing Defendant BNSF Railway Company, hereby certifies that she caused a copy of the foregoing **DEFENDANT BNSF'S RESPONSE TO PLAINTIFF'S RULE 56.1 STATEMENT OF ADDITIONAL FACTS** to be filed electronically through the e-filing system with the Northern District of Illinois, Eastern Division, and to be served electronically upon all counsel of record referenced below on December 12, 2014:

> Peter M. LaSorsa (pmllaw@yahoo.com)
> The Law Offices of Peter M. LaSorsa, P.C.
> 1 South Dearborn, Suite 2100
> Chicago, Illinois 60601

/s/Susan M. Troester